UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

EDWARD A. DIGGS,                          )
                                          )
         Plaintiff,                       )
                                          )
v.                                        )            3:23-CV-247-DCP
                                          )
COMMISSIONER OF SOCIAL SECURITY,          )
                                          )
         Defendant.                       )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal
Rules of Civil Procedure, and the consent of the parties [Doc. 14]. Now before the Court is
Plaintiff's Motion for Judgment Based on the Administrative Record [Doc. 18]. Edward A. Diggs
("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the
final decision of Defendant Commissioner of Social Security ("Commissioner"). For the reasons
set forth below, the Court will deny Plaintiff's Motion for Judgment Based on the Administrative
Record [Doc. 18] and will affirm the decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On February 9, 2021,[1] Plaintiff filed for Disability Insurance Benefits [Tr. 79] pursuant to
Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Plaintiff claimed a period of disability
that began on November 29, 2020 [*Id.* at 246]. After his claim was denied initially [*id.* at 70–79]
and upon reconsideration [*id.* at 80–89], Plaintiff requested a hearing before an ALJ [*id.* at 106–

---

[1]      The Application Summary for Disability Insurance Benefits states that Plaintiff completed
his application on March 5, 2021 [Tr. 246]. However, the Disability Determination Transmittals
indicate the filing date as February 9, 2021 [*Id.* at 79, 90].

07].  A hearing was held on March 9, 2022 [*id.* at 55][2] as well as a supplemental hearing held on January 12, 2023 [*id.* at 53–69].  On February 15, 2023, the ALJ found Plaintiff not disabled [*Id.* at 30–52].  Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 243–44].  The Appeals Council denied Plaintiff's request for review [*id.* at 16–21], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on July 11, 2023 [Doc. 1].  The parties have filed opposing briefs, and this matter is ripe for adjudication [Docs. 18, 19, 21].

## II.    DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A.    Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

---

[2]    The transcript from this hearing is not included in the administrative record [Doc. 11], and the parties did not substantively reference this hearing in their briefs.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### B. ALJ Findings

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since November 29, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*)

3

3. The claimant has the following severe impairments: disorders of the skeletal spine, abnormality of major joints, degenerative arthritis, bipolar disorder, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: sitting for up to 4 hours at one time, standing for up to 4 hours at one time, or walking for up to 2 hours at one time; in an 8-hour day, the claimant can sit or stand for up to 8 hours total, each, and walk for a total of 6 hours; has no manipulative limitations on his upper extremities; can frequently operate foot controls or other push/pull requirements with the lower extremities, bilaterally; can frequently perform postural activities, including balancing, stooping, kneeling, crouching, or crawling; can frequently perform work around unprotected heights or around vibrations; can understand, remember, and carry out simple and low-level detailed instructions; can maintain concentration and persistence for these tasks, provided he be afforded normal and customary breaks; can perform work with no more than occasional changes in the work setting; can have no more than occasional interaction with the public, coworkers, and supervisors; and has pain being from mild to moderate.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 4, 1989 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2020, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 36–46].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial

5

evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.     ANALYSIS

Plaintiff asserts two issues on appeal: that the ALJ (1) failed to properly evaluate Plaintiff's mental health limitations by acting as mental health evaluator and improperly weighing Dr. Karen Gannon's ("Dr. Gannon") opinion [Doc. 19 pp. 6–8]; and (2) did not provide limitations for Plaintiff's non-severe tinnitus and migraines [*Id.* at 13]. The Commissioner responds that the ALJ properly (1) evaluated the medical opinions related to Plaintiff's mental health [Doc. 21 p. 8] and (2) considered Plaintiff's non-severe tinnitus and migraines [*Id.* at 14]. The Court considers Plaintiffs first argument as two separate, but related, contentions and, therefore, will address them

6

as such before continuing with Plaintiff's second argument. Having reviewed this matter and after considering the parties' arguments, the Court finds that the decision of the Commission should not be disturbed.

### A.     The ALJ's Evaluation of Plaintiff's Mental Health Limitations

Plaintiff argues that "[t]he ALJ placed himself in the position of mental health evaluator when evaluating [Plaintiff's] limitations" [Doc. 19 p. 6]. Plaintiff refers to the ALJ's step two findings that Plaintiff "has no more than a mild limitation in understanding, remembering or applying information" and "no more than a moderate limitation in interacting with others" [*Id.* at 6–7 (quoting Tr. 38)]. The Commissioner responds that the ALJ supported his RFC determination with substantial evidence including the opinions of Dr. Aaron Williams ("Dr. Williams"), Dr. Jayne Dubois ("Dr. Dubois"), and Dr. Jenaan Khaleeli ("Dr. Khaleeli") [Doc. 21 pp. 8–13].

At step two in the sequential process, ALJs must determine whether a claimant has a severe impairment. This process is "highly individualized" and assesses each individual's functional limitations and capacities. 20 C.F.R. § 404.1520a(c). "To determine whether a claimant's mental impairments meet or medically equal the severity of an impairment, the ALJ assesses functional criteria to evaluate how the disorder limits the claimant's functioning." *Dunn v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-103, 2023 WL 5669124, at *11 (E.D. Tenn. July 5, 2023). Those criteria include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3)). "The ALJ is to rate the claimant's limitations in each area as none, mild, moderate, marked, or extreme." *Dunn*, 2023 WL 5669124, at *11 (citing 20 C.F.R. § 404.1520a(c)(4)). The ALJ "will consider all relevant and available clinical signs and laboratory findings, the effects of [claimant's] symptoms, and how [claimant's] functioning may be affected

7

by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a.

Here, the ALJ found that Plaintiff has a mild limitation in understanding, remembering or applying information and a moderate limitation in interacting with others [Tr. 37–38] and supported this finding with evidence on the record. Regarding Plaintiff's ability to understand, remember, or apply information, the ALJ noted that Plaintiff reported he was capable of activities of daily living such as household maintenance, doing laundry, driving, and paying bills [*Id.* at 37–38 (citing Exh. 12E)]. The ALJ also indicated that Plaintiff had graduated from high school, attended two years of college and that he was able to provide information regarding his work and medical history [*Id.* at 38 (citing Exhs. 12E, 13E, 16E, 18E, and the hearing testimony)]. These activities are all indicative of being able to understand, remember, and apply information. *See Rodriquez v. Saul*, No. 3:20-CV-252-TRM-CHS, 2022 WL 4939617, at *5 (E.D. Tenn. Mar. 18, 2022) ("For example, regarding understanding, remembering, and applying information, the ALJ pointed to: Plaintiff's statement that she could drive a car, go shopping in stores, and handle money; multiple medical records showing normal mood and affect in examinations; a lack of any consistent mental health treatment; and Plaintiff's ability to answer questions and follow along at the hearing."). Pertaining to Plaintiff's ability to interact with others, the ALJ supported his finding stating that while Plaintiff "reported problems getting along with others[,] . . . he also reported spending time with others, including talking on the phone with family members, talking to his wife daily, and video chatting with others" [Tr. at 38 (citing Exh. 12E)]. Also, the ALJ noted that Plaintiff's medical providers report that he is "engaged and cooperative" [*Id.* (citing Exh. 16F)].

In addition to Plaintiff's activities of daily living, the ALJ's mental health determinations were supported by other medical evidence on the record. For example, Dr. Williams found that Plaintiff had no more than a moderate impairment in interacting with others [*id.* at 696], which the

8

ALJ found persuasive [*id.* at 43]. Further, the State agency psychological consultants, Dr. Dubois and Dr. Khaleeli, found that Plaintiff was moderately limited in his ability to understand and remember detailed instructions [*Id.* at 72, 82]. Specifically, they found Plaintiff was not significantly limited in his ability to remember locations, work-like procedures, or very short and simple instructions, but was moderately limited in his ability to understand and remember detailed instructions [*Id.* at 75, 86]. The ALJ found their opinion mostly persuasive but determined that the record only supported that Plaintiff was mildly limited in his ability to understand and concentrate [*Id.* at 42–43]. Again, the ALJ supported this conclusion noting that Plaintiff performs household maintenance, prepares simple meals, pays the bills, attends church, drives when needed, arranges rides with others, and explained his work and health histories [*Id.* at 43]. *See Rodriquez*, 2022 WL 4939617, at *5; *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625 (6th Cir. 2016) (holding that limiting a plaintiff to simple, routine tasks or unskilled work accounts for limitations in concentration, persistence, and pace).

Accordingly, the ALJ's determination regarding Plaintiff's ability to understand, remember, and apply information and interact with others was supported by substantial evidence.

## B. Dr. Gannon's Opinion

Plaintiff argues that the ALJ improperly weighed the medical opinion of Dr. Gannon[3] [Doc. 19 p. 7]. The Commissioner responds that the ALJ properly found that Dr. Gannon's opinion was conclusory and unsupported by objective evidence [Doc. 21 pp. 11–13].

---

[3] Plaintiff argues that the ALJ failed to recognize Dr. Gannon's role as a psychologist because he referred to her as "Ms. Gannon" instead of Dr. Gannon [Doc. 19 p. 7]. As the Commissioner points out [Doc. 21 pp. 12–13], the ALJ properly identified Dr. Gannon as Plaintiff's psychologist [Tr. 44]. Further, the ALJ similarly referred to Dr. Aaron Williams, Psy.D, as Mr. Williams but found his opinion persuasive [*Id.* at 43].

9

Dr. Gannon is a Clinical Psychologist and has been treating Plaintiff since October 4, 2013 [Tr. 397]. Dr. Gannon wrote a letter on Plaintiff's behalf in which she stated that Plaintiff has combat related post-traumatic stress disorder ("PTSD") and that "he is unable to maintain long term employment, due to PTSD symptoms that interfere with his functioning" [*Id.*]. She also noted that Plaintiff has lost numerous jobs due to his "suspiciousness of others, irritability and anger outbursts, panic attacks (which severely impact his concentration and memory), difficulty multi-tasking, emotional numbing, and paranoia" [*Id.*].

The Social Security Regulations list medical opinions as one of the categories of evidence that may be considered in making a claimant's disability determination. *See* 20 C.F.R. § 404.1513(a). A medical opinion is "a statement from a medical source about what [Plaintiff] can still do despite [his/her] impairment(s) and whether [Plaintiff] has one or more impairment-related limitations or restrictions" in the ability to perform physical, mental, and other demands of work activities, as well as the ability to adapt to environmental conditions. *Id.* § 404.1513(a)(2). ALJs are not required to analyze "[e]vidence that is inherently neither valuable nor persuasive," which includes statements that are reserved for the Commissioner, such as whether a claimant is disabled or able to work. *Id.* § 404.1520b(c), (c)(3)(1). An ALJ must "evaluate the persuasiveness of [the] medical opinions" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(a), (c). Of these five factors, "[t]he most important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2).

In this case, the ALJ properly determined that Dr. Gannon's letter was not a medical opinion under the Social Security Regulations and therefore was not required to analyze it as one.

Dr. Gannon's letter was limited to conclusory statements regarding Plaintiff's ability to work—a determination solely left to the Commissioner. Dr. Gannon "never alluded to any particular abilities or restrictions that were imposed by Plaintiff's impairments." *Ryant v. Saul*, No. CV 1:19-2377, 2020 WL 5128492, at *11 (D.S.C. July 30, 2020), *report and recommendation adopted*, No. 1:19-02377, 2020 WL 5107552 (D.S.C. Aug. 31, 2020). Therefore, Dr. Gannon's letter did not constitute a medical opinion under the regulations because it was not indicative of what Plaintiff "can still do despite [his] impairment(s) and whether [Plaintiff has] one or more impairment-related limitations or restrictions" related to work-activities. 20 C.F.R. § 404.1513(a)(2). As such, the ALJ was not required to analyze Dr. Gannon's opinion for consistency and supportability as he did for the medical opinions on the record. *Id.*; *see also Harper v. Comm'r of Soc. Sec.*, No. 5:21-CV-01078, 2022 WL 3028094, at *2–3 (N.D. Ohio Aug. 1, 2022) ("Dr. Offutt's failure to specify any work activity [plaintiff] could still do despite her impairments is reason enough to conclude that the information provided by Dr. Offutt is not a medical opinion according to the applicable regulations. . . . Given this conclusion, the ALJ was not required to specifically articulate how persuasive she found Dr. Offutt's statement.").

## C. Non-Severe Impairments

Plaintiff argues that the ALJ erred in failing to provide limitations for tinnitus and migraines which affect his ability to work when considered in combination with Plaintiff's other impairments. [Doc. 19 pp. 8–9]. The Commissioner responds that the ALJ properly considered Plaintiff's non-severe tinnitus and migraines, finding his migraines were controlled with medication and his tinnitus did not result in any hearing deficits [Doc. 21 p. 14].

At step two in the sequential process, a claimant is required to show that they suffer from a "severe impairment" in order to be found disabled. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). A "severe impairment" is one that "significantly limits your physical or

11

mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Once an ALJ finds that a claimant has one severe impairment, they must consider both severe and non-severe impairments at the remaining steps. *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). As such, it has long been held that "[g]enerally, an ALJ does not commit an error requiring automatic reversal by finding a non-severe impairment under two circumstances: (1) the ALJ also found that claimant has at least one severe impairment; and (2) the ALJ considers both the severe and non-severe impairments during the remaining steps in the sequential evaluation." *Johnson v. Colvin*, No. 3:13CV00301, 2014 WL 6603376, at *7 (S.D. Ohio Nov. 19, 2014), *report and recommendation adopted*, No. 3:13CV00301, 2014 WL 7015188 (S.D. Ohio Dec. 10, 2014).

This Sixth Circuit has held that an ALJ's "express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [Plaintiff's] nonsevere impairments at step two of her analysis, fully support [the] conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). Applying *Emard*, courts in this Circuit have found the ALJ "properly considered all of plaintiff's impairments when crafting the RFC" where "the ALJ makes clear that her decision is controlled by SSR 96-8p" and provided "subsequent assurance that she had 'considered the entire record and all symptoms'"). *Yost v. Comm'r of Soc. Sec.*, No. 1:23-CV-00699-JRA, 2024 WL 1054234, *7–8 (N.D. Ohio Jan. 26, 2024) (6th Cir. 2020) (citing *Emard*, 953 F.3d at 851–52); *see also Laura Q. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-131, 2024 WL 1170037 (S.D. Ohio Mar. 19, 2024) (finding the same).

Such is the case here. Near the beginning of the ALJ's decision, he mentions that "[i]n making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe" and cites to SSR 96-8p [Tr. 36]. At step two, the ALJ found that Plaintiff had the following severe impairments: disorders of the skeletal spine, abnormality of

12

major joints, degenerative arthritis, bipolar disorder, and posttraumatic stress disorder [*Id.*]. The ALJ explained that while Plaintiff had alleged "he is unable to perform work activity secondary to migraine headaches, the record shows these were well controlled with medication management" [*Id.* at 37 (citing Exhs. 14F, 15F)]. *See Vazquez v. Comm'r of Soc. Sec.*, No. 1:13 CV 2219, 2014 WL 4924957, at *3 (N.D. Ohio Sept. 30, 2014) ("Substantial evidence, in the form of the finding that the migraines are well controlled by medication, therefore, supports the ALJ's decision not to find migraines as a [severe] impairment."). Similarly, he noted that the record showed Plaintiff had tinnitus but "there is no evidence [Plaintiff] received any type of specific treatment for this impairment during the relevant period" [*Id.*]. While the ALJ did not discuss either of these non-severe impairments in the residual-functional-capacity assessment, he was not required to do so under *Emard*. 953 F.3d at 852. Therefore, the ALJ did not err in considering Plaintiff's non-severe impairments.

## V. CONCLUSION

For the reasons set forth above, the Court will **DENY** Plaintiff's Motion for Judgment Based on the Administrative Record [**Doc. 18**]. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

**IT IS SO ORDERED**.

ENTER:

Debra C. Poplin
United States Magistrate Judge